UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| LISLEWOOD CORPORATION, | ) | |
|---|---|---|
| | ) | No. 13 CV 1418 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Young B. Kim |
| | ) | |
| AT&T CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| AT&T CORPORATION, | ) | |
| | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MARRIOTT INTERNATIONAL, INC., | ) | |
| | ) | March 31, 2015 |
| Third-Party Defendant. | ) | |

**MEMORANDUM OPINION and ORDER**

Before the Court is the motion of Lislewood Corporation ("Lislewood") to compel Defendant AT&T Corporation ("AT&T") and Third-Party Defendant Marriott International, Inc. ("Marriott") to produce documents withheld under a claim of joint-defense or common-interest privilege. For the following reasons, Lislewood's motion is denied:

**Background**

In July 1982, predecessors-in-interest to both Lislewood and AT&T entered into a 30-year commercial lease ("Lease") for a conference center in Lisle, Illinois

("Premises"). (R. 130, Def.'s Resp. at 3.) During the term of the Lease, AT&T agreed to maintain the Premises "in good repair and condition, except for ordinary wear and tear." (Id.) In December 1996, AT&T entered into a sublease ("Sublease") of the Premises with Marriott. As part of the Sublease, Marriott agreed to "fully indemnify, defend and save harmless [AT&T] from and against any and all claims, costs, losses, damages and expenses (including reasonable legal fees and court costs)" arising out of Marriott's use of the Premises or breach of the Sublease. (R. 41-2, Third-Party Compl., Ex. 2, Sublease § 35.) The Sublease terminated on July 30, 2012, and the Lease expired the following day.

In anticipation of and following the termination of the Lease and Sublease, AT&T and Marriott attorneys corresponded with one another regarding communications from Lislewood about the state of the Premises and potential liability issues. (R. 130, Def.'s Resp. at 5.) AT&T and Marriott executed a "Common Interest Privilege/Joint Defense Agreement" on September 19, 2012. (Id. at 6.) Lislewood filed a complaint against AT&T on February 22, 2013, alleging that AT&T breached the Lease by failing to properly maintain the Premises. (R. 1, Pl.'s Compl.) On January 8, 2014, AT&T filed a third-party complaint against Marriott for indemnification and breach of the Sublease. (R. 41, Third-Party Compl.)

Lislewood issued a discovery request, dated June 20, 2013, to AT&T and Marriott seeking information relating to the maintenance and repair efforts at the Premises. (R. 126-1, Ex. A, Pl.'s Doc. Req. to AT&T; R. 126-1, Ex. C, Pl.'s Doc. Req.

to Marriott.) AT&T and Marriott withheld and redacted some of the requested documents, objecting to portions of the discovery requests under claims of attorney-client privilege, work-product privilege, and the joint-defense or common-interest doctrine. (R. 126-1, Ex. D, AT&T Resp. to Disc. ¶ 1; R. 126-1, Ex. E, Marriott Resp. to Disc. ¶ 2.) Both parties provided privilege logs describing the communications withheld. (R. 126-1, Ex. F, AT&T Priv. Log; R. 126-1, Ex. G, Marriott Priv. Log.) Pursuant to Federal Rule of Civil Procedure 37, Lislewood now seeks to compel the production of documents withheld and redacted by AT&T and Marriott, arguing that the parties do not share a common interest and that, even if they do, the adverse-interest exception neutralizes any protection it may afford.

**Analysis**

Under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense" or that "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). This court has broad discretion in resolving disputes related to discovery. *See Spiegla v. Hull,* 371 F.3d 928, 944 (7th Cir. 2004). The current motion requires this court to resolve three points of contention: (1) whether the communications at issue are privileged; (2) whether AT&T and Marriott share a common legal interest sufficiently strong to invoke the common-interest doctrine; and (3) whether an adverse interest exists between AT&T and Marriott that precludes the assertion of the common-interest doctrine. *See McCullough v. Fraternal Order of Police*, No. 12

CV 9359, 2014 WL 2514623, at *5 (N.D. Ill. June 4, 2014); *Waste Mgmt., Inc. v. Int'l Surplus Lines Ins. Co.*, 579 N.E.2d 322 (Ill. 1991).

A.  **Attorney-Client and Work-Product Privileges**

The court first addresses whether the disputed documents are privileged because the common-interest doctrine only protects communications that are already otherwise privileged. *McCullough*, 2014 WL 2514623, at *5. The attorney-client privilege protects verbal and written communications exchanged in confidence between a client and an attorney for the purpose of obtaining legal advice. *See Upjohn Co. v. United States,* 449 U.S. 383, 394-99 (1981). In a diversity action such as this one, the applicability and scope of attorney-client privilege is governed by the law of the forum state. *Urban Outfitters, Inc. v. DPIC Cos., Inc.*, 203 F.R.D. 376, 378 (N.D. Ill. 2001); *see also* Fed. R. Evid. 501. Illinois law regarding attorney-client privilege is identical to federal law in that they both require the court to determine whether legal advice of any kind was sought from an attorney in his or her capacity as an attorney, whether the material sought in discovery contains communication related to the purpose of seeking such legal advice, and whether such communication was made in confidence. *See id.*; *Sandra T.E. v. South Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010).

While the attorney-client privilege is governed by state law, the work-product doctrine is determined by federal law even in diversity cases. *See Dawson v. New York Life Ins. Co.*, 901 F. Supp. 1362, 1367 (N.D. Ill. 1995); Fed. R. Civ. P. 26(b)(3). Unlike the attorney-client privilege, work-product privilege protects documents

4

prepared by attorneys in anticipation of litigation for the purpose of analyzing, evaluating and preparing a client's case. *See* Fed. R. Civ. P. 26(b)(3); *United States v. Smith*, 502 F.3d 680, 689 (7th Cir. 2007). The work-product doctrine creates a "zone of privacy" for lawyers to "analyze and prepare their client's case free from scrutiny or interference by an adversary." *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 734 (N.D. Ill. 2014). The court must determine whether the documents sought in discovery contain an attorney's thought processes and mental impressions. *See Sandra T.E.,* 600 F.3d at 621-22. But even where the work-product privilege would normally apply, it may be waived where protected communications are disclosed in a manner that "enable[s] an adversary to gain access to the information." *See Behnia v. Shapiro,* 176 F.R.D. 277, 279 (N.D. Ill. 1997). Nonetheless, "[w]hat constitutes a waiver with respect to work-product materials depends, of course, upon the circumstances." *United States v. Nobles,* 422 U.S. 225, 239 n.14 (2000).

In this case, the documents over which AT&T and Marriott assert the common-interest doctrine are covered by the attorney-client and work-product privileges. For each of the disputed documents, AT&T's privilege log provides a description of the parties to the communication, a general description of the communication's substance, and the privilege claimed. (See R. 126-1, Ex. F, AT&T Priv. Log, Nos. 396, 408, 451-454, 459-61, 496, 498, 515, 517-19, 563, 565, 568-69 610-11, 613-14, 683-86, 733-38, 742-44.) Marriott's privilege log includes similar information. (See R. 126-1, Ex. G, Marriott Priv. Log, Nos. 1-4, 6-7, 17-18, 21-23,

5

29-31, 33-34, 42, 47, 50-51, 57, 59-61.) According to the privilege logs, these documents include communications within the parties' legal teams, communications between members of the legal teams and AT&T and Marriott employees, and employee communications reflecting the legal advice given by counsel. (Id.) They also include documents and communications dated between August 2012 and February 2013, reflecting the time period during which AT&T anticipated possible litigation over the property turnover and related repairs.[1] (Id.) Although Lislewood asserts that Marriott could not have anticipated litigation because it had no contractual relationship with Lislewood and was not engaged in communications with Lislewood, each of the documents over which Marriott asserts the common-interest privilege appears to be otherwise protected by attorney-client privilege anyway. Finally, as Lislewood acknowledges, some of the communications are related to the joint-defense agreement itself, which was clearly prepared in anticipation of litigation. (R. 126-1, Ex. F, AT&T Priv. Log, Nos. 408, 459, 460, 613; R. 126-1, Ex. G, Marriott Priv. Log, Nos. 6-7); *see McNally Tunneling Corp. v. City of Evanston*, No. 00 CV 6979, 2001 WL 1246630, at *4 (N.D. Ill. Oct. 18, 2001).

The burden of showing that a particular document is privileged is on the party claiming the privilege, and any party claiming privilege must present for each document an explanation sufficient for the court to determine whether the party

---

[1] The court notes that No. 569 of AT&T's privilege log is described as "Attorney notes on engineering report" authored by counsel for AT&T and is dated "9/00/1996," an apparent typo. (R. 126-1, Ex. F, AT&T Priv. Log.) Based on this and similar entries, the court assumes for purposes of this motion that No. 569 was an attachment to No. 568, and is therefore privileged.

6

has discharged its burden. *See Allendale Mut. Ins. Co. v. Bull Data Sys.*, 152 F.R.D. 132, 137 (N.D. Ill. 1993) (citations omitted). Given the above, the court concludes that AT&T and Marriott have met their burden of explaining why the disputed documents are otherwise covered by attorney-client and work-product privileges, and that an *in camera* inspection is unnecessary to rule on the instant motion.

**B.     Common-Interest Doctrine**

Having determined for purposes of this motion that the disputed documents are privileged, the court turns next to the question of whether Marriott and AT&T share a sufficiently strong common interest regarding those documents to warrant common-interest protection. *See McNally*, 2001 WL 1246630, at *4; *Allendale*, 152 F.R.D. at 137, 140 (finding that the common-interest doctrine only protects documents which otherwise fall under a privilege, and that the withholding party bears the burden of establishing that the material is privileged). The common-interest rule extends privilege to communications made in the presence of third-parties for the purpose of coordinating a defense strategy or pooling information for a common legal purpose. *See United States v. BDO Seidman, LLP*, 492 F.3d 806, 816 (7th Cir. 2007); *United States v. Evans*, 113 F.3d 1457, 1467 (7th Cir. 1997); *Domanus v. Lewicki*, No. 08 CV 4922, 2012 WL 6568227, at *3 (N.D. Ill. Dec. 14, 2012); *Blanchard v. EdgeMark Fin. Corp.*, 192 F.R.D. 233, 237 (N.D. Ill. 2000); *see also Dexia Credit Local v. Rogan*, 231 F.R.D. 287, 291, 295, (N.D. Ill. 2005) ("[T]he identity of interest may be established by showing that the sharing of documents was for the purpose of cooperating in pursuit of a common legal goal."). Recognizing

that waiver may occur where otherwise privileged material is communicated with a third party, the common-interest doctrine functions as an exception to such waiver "where the third party shares a common interest with the disclosing party which is adverse to that of the party seeking discovery." *Allendale*, 152 F.R.D. at 140; *see Pampered Chef v. Alexanian*, 737 F. Supp. 2d 958, 964 (N.D. Ill. 2010) (a party does not waive privilege by the presence of a third party where that party shares a common legal interest).

*Waste Management*, a principle case governing attorney-client privilege in Illinois, is particularly instructive here. In that case, the Illinois Supreme Court extended attorney-client privilege to communications between an insurer and insureds "as to party opponents in the underlying litigation" because where the insurer remained ultimately liable, the limitation of liability in the underlying suit was an interest common to the parties. *See* 579 N.E.2d at 335-36. Because the withheld documents were generated to minimize liability in the underlying litigation, the court reasoned that the common-interest doctrine extended attorney-client and work-product privilege to those documents. *Id*. at 336. The *Waste Management* court further found that any adverse interests between the parties on collateral issues did not undermine the common interest shared by the parties in the underlying suit. *Id*.; *see Fed. Deposit Ins. Corp. v. Coleman Law Firm*, No. 11 CV 8823, 2014 WL 3734119, at *2 (N.D. Ill. July 29, 2014) ("[T]he common interest privilege 'falls away when there is a dispute . . . *between the two parties with common interests* that is within the scope of the attorney's representation.'")

8

(quoting *Fed. Deposit Ins. Corp. v. Belongia Shapiro & Franklin, LLP*, No. 12 CV 2889, 2012 WL 5877559, at *4 (N.D. Ill. Nov. 19, 2012) (emphasis added)).

This district has followed *Waste Management* in its application of attorney-client privilege and in discerning the common interest of adverse parties. *See, e.g., Abbott Labs.*, 200 F.R.D. at 405-08; *CSX Transp., Inc. v. Lexington Ins. Co.*, 187 F.R.D. 555, 559-60 (N.D. Ill. 1999); *LaSalle Nat'l Trust, NA v. Schaffner*, No. 91 CV 8247, 1993 WL 105422, at *5-6 (N.D. Ill. Apr. 6, 1993). For example, in *Schaffner*, where counsel for one of the adverse parties acted for their mutual benefit in defending an underlying suit, the court applied the common-interest doctrine to protect the communications involved therein despite the parties' interests being adverse on the issue of indemnity. 1993 WL 105422, at *5. The *Schaffner* court relied on the reasoning in *Waste Management* that even without an express cooperation clause, an indemnitor should not be "'relegated to a less secure position' with respect to information when it does not defend but merely has the duty to indemnify." *Id.* at *4 (quoting *Waste Management*, 579 N.E.2d at 333). Similarly, the Seventh Circuit has applied the common-interest privilege even in situations where one party has no anticipation of being joined in litigation. *United States v. BDO Seidman, LLP*, 492 F.3d 806, 816 n.6 (7th Cir. 2007); *see Pampered Chef*, 737 F. Supp. 2d at 965 ("[T]he Seventh Circuit permits both potential parties and parties who are not otherwise joined in litigation to assert the 'common legal interest' privilege, even where it is not anticipated that the party will be sued in the future.").

*Waste Management* and the cases discussed above undermine Lislewood's contention that AT&T and Marriott's common interest is insufficient. Yet Lislewood nevertheless contends that the common-interest doctrine does not apply, relying primarily on *McNally*. In *McNally*, the court compelled the production of portions of a settlement agreement between the defendant City of Evanston and a third party, Harza Environmental Services, noting that the common-interest doctrine is inapplicable if parties have an incentive to "blame each other" for alleged wrongful conduct. 2001 WL 1246630, at *4-5. But the court in *McNally* differentiated between the settlement agreement and the joint-defense agreement, noting that while the settlement agreement related to future potential litigation between Evanston and Harza, the joint-defense agreement was created for the parties' shared interests in the underlying litigation against McNally. *Id.* at *3. The court ultimately decided that the settlement agreement was not subject to the protection of the common-interest doctrine because the parties could not show that the document related to common rather than adverse interests. *Id.* However, because the joint-defense agreement between the parties did clearly relate to their common interests—defense against McNally's suit—the court applied the common-interest doctrine. *Id.*

Lislewood further contends that Marriott's sole legal interest relates to its own breach of the Sublease. (R. 126, Pl.'s Mem. at 11-12.) But this contention ignores the fact that AT&T's third-party complaint and the Sublease explicitly acknowledge Marriott's obligation to indemnify AT&T for *any claims* arising out of

its use of the Premises. (R. 41, Third-Party Compl. ¶ 18; R. 41-2, Ex. 2, Sublease § 35.) In other words, the question of Marriott's indemnification obligation arises precisely because it is an indemnitor of Lislewood's claim against AT&T. *See Dexia*, 231 F.R.D. at 294 (finding that parties may share "an identical interest . . . from different perspectives"). In Count II of the Third-Party Complaint, AT&T alleges breach of contract by Marriott only to the extent that Lislewood's claim against AT&T is successful. (R. 41, Third-Party Compl. ¶¶ 36-38.) Accordingly, in this context AT&T and Marriott do share a common legal interest—that AT&T is found not liable in Lislewood's original action. *See Abbott Labs*, 200 F.R.D. at 406-07 (finding indemnitor Abbott and indemnitee Alpha had common interest in resisting claims against Alpha, even where Abbott did not participate in the underlying litigation and ultimately refused to indemnify Alpha). AT&T and Marriott claim joint-defense privilege over communications concerning the Sublease, repairs, tax payments, engineering notes, communication about landlords' requested repairs, turnover issues, and the joint-defense agreement itself. (R. 126-1, Pl.'s Mot., Ex. F & Ex. G.) These are precisely the issues about which AT&T and Marriott have a common interest adverse to Lislewood and to which the common-interest doctrine therefore applies.

C.  **Adverse-Interest Exception**

Lislewood nonetheless asserts that even if Marriott and AT&T share a common legal interest, the adverse-interest exception negates any claim of privilege. The adverse-interest exception to the common-interest doctrine precludes

parties from asserting privilege against one another once their interests have become adverse. *See Dexia,* 231 F.R.D. at 295-96. Lislewood again falls back on the *McNally* court's conclusion that the common-interest doctrine does not apply where parties attempt to assert a common interest in areas where they are actually adverse. *See McNally*, 2001 WL 1246630, at *3. But as already discussed above, Lislewood overlooks the fact that the court in *McNally* differentiated between areas of common interests and adverse interests, applying the common-interest doctrine to the former and not the latter. *Id.* Lislewood's reliance on *Dexia* is similarly misplaced. While the *Dexia* court did apply the adverse-interest exception, it explained that the exception only precludes parties who share or shared a common interest from subsequently asserting privileges *against one another* for communications protected against outsiders by the common-interest doctrine. *See Dexia*, 231 F.R.D. at 291, 295. The court found that where the parties had become adverse to one another and attempted to prevent the other from using the documents covered by a prior common interest, the adverse-interest exception prevented the assertion of privilege. *Id.* at 295-96. Here, AT&T and Marriott are not asserting their privileges against each other as to the documents sought by Lislewood. Accordingly, the adverse-interest exception does not apply.

## Conclusion

For the foregoing reasons, Lislewood's motion to compel is denied.

**ENTER:**

_____
**Young B. Kim
United States Magistrate Judge**